# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JODIE CORDOVA and STEVEN HART, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE VALSPAR CORPORATION and THE SHERWIN-WILLIAMS COMPANY,<br><br>Defendants. | Case No.: |

## CLASS ACTION COMPLAINT

Plaintiff Jodie Cordova ("Cordova") and Plaintiff Steven Hart ("Hart") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys Siegel & Dolan Ltd, complain against The Valspar Corporation ("Valspar") and The Sherwin-Williams Company ("Sherwin") (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. This is a class action under the Biometric Information Privacy Act, 740 Ill. Comp. Stat. 14/l, *et seq.* ("BIPA") on behalf of all persons in Illinois who had their biometric identifiers and biometric information improperly collected, captured, received, or otherwise obtained by Defendants.

### PARTIES

2. Plaintiff Cordova is an adult resident of Bourbonnais, Illinois and works as an hourly employee for Defendants at its manufacturing plant in Kankakee, Illinois.

3. Plaintiff Hart is an adult resident of Bourbonnais, Illinois and worked as an Operations Supervisor for Defendants at its manufacturing plant in Kankakee, Illinois.

4. Approximately two hundred (200) employees performed work for Defendants at its manufacturing plant in Kankakee, Illinois during the relevant time period giving cause to the legal claims herein.

5. Defendants collected biometric identifiers and biometric information from its employees through its employee identification/authentication system. Plaintiffs and these individuals are referred to herein as the "putative BIPA Class" members.

6. Defendant Valspar is a manufacturer of paint and coatings with its headquarters in Minneapolis, Minnesota and a manufacturing plant located at 901 North Greenwood Avenue, Kankakee, Illinois 60901. Valspar conducts substantial business operations throughout the state of Illinois.

7. Defendant Valspar is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

8. Defendant Sherwin is a manufacturer, distributor and seller of paints and coatings with its headquarters in Cleveland, Ohio and a manufacturing plant in Kankakee, Illinois. Sherwin conducts substantial business operations throughout the state of Illinois.

9. Defendant Sherwin is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction of this action under 28 U.S.C. § 1332(a) and the Class Action Fairness Act, 28 U.S.C. § 1332(d).

11. The unlawful employment practices described herein were committed at

Defendants' facility in Kankakee, Illinois, in this judicial district. Venue in the Central District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

12. Hart began working for Valspar as an Operations Supervisor in or around September 2016 at its Kankakee, Illinois manufacturing plant.

13. Hart was employed at the time Valspar installed a new Kronos time system that included a fingerprint scanner in or around April 2017.

14. Shortly thereafter, as a condition of his continued employment, Valspar required Hart to have his fingerprint collected and/or captured so that Valspar could store his fingerprint and use his fingerprint as an employee authentication method going forward, instead of using only key fobs or other identification cards.

15. Cordova began working for Valspar as a Shipper in or around May 2017 at its Kankakee, Illinois manufacturing plant.

16. The biometric scanner system for employee authentication was already in place at the time that Cordova began working for Valspar.

17. During the orientation process within the first two weeks of Cordova's employment with Valspar and as a condition of her continued employment, Valspar required Cordova to have her fingerprint collected and/or captured so that Valspar could store her fingerprint and use her fingerprint as an employee authentication method going forward, instead of using only key fobs or other identification cards.

18. Valspar subsequently stored Plaintiffs' fingerprint data in its database(s).

19. After collecting/capturing their fingerprints in Valspar's biometric tracking system, Plaintiffs used the fingerprint scanner to clock-in and clock-out of work each day.

20. Plaintiffs' co-workers were similarly required to have their fingerprints collected and/or captured as a condition of their continued employment with Valspar so that Valspar could store their fingerprint data and use it for employee authentication.

21. During the relevant time period, there were approximately two hundred (200) employees working at Valspar's manufacturing plant in Kankakee.

22. Valspar required Plaintiffs and the putative BIPA Class to enter a numeric passcode first, then scan their respective fingerprint to clock-in and enter the employee work area at Defendants' facility.

23. Valspar required Plaintiffs and the putative BIPA Class to use a fingerprint scanner each time they began their workday.

24. Valspar never informed Plaintiffs and the putative BIPA Class of the specific limited purposes or length of time for which it collected, stored, or used their biometric identifiers and biometric information.

25. Similarly, Valspar never informed Plaintiffs and the putative BIPA Class of any biometric data retention policy that it developed, nor whether Valspar would ever permanently delete their biometric information.

26. Valspar failed to provide Plaintiffs or any member of the putative BIPA Class, with written notice of the fact that they were collecting biometric information prior to collection.

27. Valspar failed to maintain or publicize information about its biometric practices or policies; and failed to provide Plaintiffs, or any member of the putative BIPA Class, with information about their policies or practices.

28. Plaintiffs were not provided with, nor did they ever sign a written release allowing Valspar to collect or store their biometric information.

29. Plaintiffs' experiences as described above are typical and representative of the experiences of the putative BIPA Class.

30. Plaintiffs and the putative BIPA Class have continuously and repeatedly been exposed to risks, harmful conditions, and violations of privacy through Defendants' violations of BIPA as described herein.

31. On June 1, 2017, Sherwin acquired Valspar in a business merger. As a result of the merger, Sherwin has successor liability.

32. Following the merger, Sherwin became Plaintiffs' employer.

33. In or about early 2018, Defendants discontinued the use of fingerprint scanners in the Kankakee manufacturing plant.

34. Hart's employment with Defendants ended in March 2020, yet at no point have Defendants informed Hart or other members of the putative BIPA Class no longer employed by Defendants as to when and how their personal biometric information would be permanently destroyed, if at all.

35. Despite the use of biometric scanners being discontinued over two years ago and the initial purpose of Defendants' collection of personal biometric data assumedly having been satisfied, Defendants never informed Plaintiffs or members of the putative BIPA Class that their personal biometric data in Defendants' possession had been deleted.

## BIPA CLASS ALLEGATIONS

36. The practices, policies, and consequences pertinent to Defendants' biometric system as described above apply to each BIPA Class member.

37. Defendants employed approximately two hundred (200) individuals in Illinois who are similarly situated persons and potential BIPA Class members.

5

38. Plaintiffs bring this action pursuant to Fed. R. Civ. P 23 on behalf of Plaintiffs and the putative BIPA Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their biometric information collected, captured, received, otherwise obtained, used, distributed, or stored by Defendants in the State of Illinois.

39. This action on behalf of the Rule 23 class satisfies the requirements of Fed. R. Civ. P. 23(a), as alleged in the following particulars:

   a) The exact number of putative BIPA Class members is unknown to Plaintiffs at this time, but it is clear that individual joinder is impracticable. Defendants have collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the putative BIPA Class. Ultimately, the putative BIPA Class members will be easily identified through Defendants' records.

   b) There are questions of law and/or fact common to the claims of Plaintiffs and the putative BIPA Class, including: (i) whether Defendants collected, captured, or otherwise obtained Plaintiffs' and the putative BIPA Class's biometric identifiers or biometric information; (ii) whether Defendants properly informed Plaintiffs and the putative BIPA Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information; (iii) whether Defendants obtained a written release (as defined in 740 Ill. Comp. Stat. 14/10) to collect, use, and store Plaintiffs' and the putative BIPA Class's biometric identifiers or biometric information; (iv) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial

purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first; (v) whether Defendants comply with any such written policy (if one exists); (vi) whether Defendants used Plaintiffs' and the putative BIPA Class's fingerprints to identify them; and (vii) whether Defendants violations of the BIPA were committed negligently or recklessly.

c) The claims of Plaintiffs are typical of the claims of the proposed class and they have the same interests as the other members of the putative BIPA Class; and

d) Plaintiffs will fairly and adequately represent and protect the interests of the putative BIPA Class and have retained counsel competent and experienced in complex litigation and class actions.

40. In addition, this action satisfies the requirements of Fed. R. Civ. P. 23(b), because the questions of law and/or fact common to the members of the proposed class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all class members is impractical. The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. The damages suffered by the individual members of the putative BIPA Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants wrongful conduct. Thus, it would be virtually impossible for the individual members of the putative BIPA Class to obtain effective relief from Defendants misconduct. Even if members of the putative BIPA Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to

all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured. There will be no difficulty in the management of this action as a class action.

### COUNT I – BIOMETRIC INFORMATION PRIVACY ACT
### 740 Ill. Comp. Stat. 14/15(a)
### (Class Action)

41. Plaintiffs restate and incorporate paragraphs 1-40 as though fully set forth herein.

42. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 Ill. Comp. Stat. 14/10.

43. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 Ill. Comp. Stat. 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

44. The BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information once the initial purpose for collecting and/or obtaining such biometric data has been satisfied or within three years of an individual's last interaction with the company, whichever occurs first. *See* 740 Ill. Comp. Stat. 14/15(a).

45. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting, or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

46. Defendants failed to comply with these BIPA mandates.

47. Valspar is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

48. Sherwin is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

49. Plaintiffs and the putative BIPA Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints). *See* 740 Ill. Comp. Stat. 14/10.

50. Plaintiffs and the putative BIPA Class's biometric identifiers or information based on those biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

51. Defendants violated 740 Ill. Comp. Stat. 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

52. Defendants further violated 740 Ill. Comp. Stat. 14/15(a) by failing to adhere to a retention schedule and actually deleting/destroying the biometric information of Plaintiffs and members of the putative BIPA Class once the initial purpose for collecting and/or obtaining such

biometric data was satisfied.

53. By collecting, storing, and using Plaintiffs' and the putative BIPA Class's biometric identifiers and biometric information as described herein, and not actually deleting and destroying the biometric information of Plaintiffs' and members of the putative BIPA Class, Defendants violated Plaintiffs' and the putative BIPA Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 Ill. Comp. Stat. 14/1, et seq.; *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186, 2019 WL 323902 (Ill. Jan. 25, 2019).

54. For each of the violations identified above, Plaintiffs and the members of the putative BIPA Class are entitled to recover anywhere from $1,000 to $5,000 in statutory damages. Given that Defendants biometric scanner system was in place for at least six (6) months, if not longer, the class-wide damages exceeds $5,000,000.00 as required under the Class Action Fairness Act.

WHEREFORE, Plaintiff Jodie Cordova and Plaintiff Steven Hart, individually and on behalf of other similarly situated individuals, respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants Valspar and Sherwin-Williams and grant them the following relief:

A. Certifying this case as a class action on behalf of the putative BIPA Class defined above, appointing Plaintiffs as representatives of the putative BIPA Class, and appointing their counsel as Class Counsel;

B. Awarding injunctive and other equitable relief as is necessary to protect the interests of the putative BIPA Class, including an Order requiring Defendants to comply with all provisions of the BIPA;

C. Awarding statutory damages to each person whose rights were violated under the

BIPA, pursuant to 740 Ill. Comp. Stat. 14/20;

D. Awarding Plaintiffs and the putative BIPA Class their reasonable litigation expenses and attorneys' fees;

E. Awarding Plaintiffs and the putative BIPA Class pre- and post-judgment interest, to the extent allowable; and

F. Awarding such other and further relief as equity and justice may require.

### COUNT II – BIOMETRIC INFORMATION PRIVACY ACT
### 740 Ill. Comp. Stat. 14/15(b)
### (Class Action)

55. Plaintiffs restate and incorporate paragraphs 1-40 as though fully set forth herein.

56. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 Ill. Comp. Stat. 14/15(b) (emphasis added).

57. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 Ill. Comp. Stat. 14/10.

58. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 Ill. Comp. Stat. 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

59. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting, or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

60. Defendants failed to comply with these BIPA mandates.

61. Valspar is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

62. Sherwin is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

63. Plaintiffs and the putative BIPA Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints). *See* 740 Ill. Comp. Stat. 14/10.

64. Plaintiffs and the putative BIPA Class's biometric identifiers or information based on those biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

65. Defendants violated 740 Ill. Comp. Stat. 14/15(b)(1) by failing to inform Plaintiffs and the putative BIPA Class in writing that their biometric identifiers and biometric

information were being collected and stored.

66. Defendants violated 740 Ill. Comp. Stat. 14/15(b)(2) by failing to inform Plaintiffs and the putative BIPA Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

67. Defendants violated 740 Ill. Comp. Stat. 14/15(b)(3) by failing to obtain written releases from Plaintiffs and the putative BIPA Class before it collected, used, and stored their biometric identifiers and biometric information.

68. By collecting, storing, and using Plaintiffs' and the putative BIPA Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiffs' and the putative BIPA Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 Ill. Comp. Stat. 14/1, et seq.; *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186, 2019 WL 323902 (Ill. Jan. 25, 2019).

69. For each of the violations identified above, Plaintiffs and the members of the putative BIPA Class are entitled to recover anywhere from $1,000 to $5,000 in statutory damages. Given that Defendants' biometric scanner system was in place for at least six (6) months, if not longer, the class-wide damages exceeds $5,000,000.00 as required under the Class Action Fairness Act.

WHEREFORE, Plaintiff Jodie Cordova and Plaintiff Steven Hart, individually and on behalf of other similarly situated individuals, respectfully request that this Honorable Court enter judgment in favor of Plaintiffs and against Defendants Valspar and Sherwin-Williams and grant them the following relief:

A. Certifying this case as a class action on behalf of the putative BIPA Class defined above, appointing Plaintiffs as representative of the putative BIPA Class, and

          appointing their counsel as Class Counsel;

B.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the putative BIPA Class, including an Order requiring Defendants to comply with all provisions of the BIPA;

C.     Awarding statutory damages to each person whose rights were violated under the BIPA, pursuant to 740 Ill. Comp. Stat. 14/20;

D.     Awarding Plaintiffs and the putative BIPA Class their reasonable litigation expenses and attorneys' fees;

E.     Awarding Plaintiffs and the putative BIPA Class pre- and post-judgment interest, to the extent allowable; and

F.     Awarding such other and further relief as equity and justice may require.

Dated: November 18, 2020                    Respectfully submitted,

Marc J. Siegel, IARDC No. 6238100        JODIE CORDOVA and STEVEN HART,
Bradley Manewith, IARDC No. 6280535     on behalf of themselves and all other
James D. Rogers, IARDC No. 6324570      similarly situated persons, known and
Siegel & Dolan Ltd.                                unknown
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel. (312) 878-3210
Fax (312) 878-3211
msiegel@msiegellaw.com
bmanewith@msiegellaw.com              By:/s/ Bradley Manewith
jrogers@msiegellaw.com                       *One of Plaintiffs' Attorneys*