**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| STEVEN HART, individually and on behalf of all others similarly situated, | Case No.: 2:20-cv-02325-CSB-EIL |
| Plaintiff, | Hon. Colin Stirling Bruce<br>*Judge Presiding* |
| v. | Hon. Eric I. Long<br>*Magistrate Judge* |
| THE VALSPAR CORPORATION and THE SHERWIN-WILLIAMS COMPANY, | |
| Defendants. | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Steven Hart ("Hart"), individually and on behalf of all others similarly situated, by and through his attorney Siegel & Dolan Ltd, complains against The Valspar Corporation ("Valspar") and The Sherwin-Williams Company ("Sherwin") (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1.      This is a class action under the Biometric Information Privacy Act, 740 Ill. Comp. Stat. 14/l, *et seq.* ("BIPA") on behalf of all persons in Illinois who had their biometric identifiers and biometric information improperly collected, captured, received, or otherwise obtained by Defendants.

### PARTIES

2.      Plaintiff Hart is an adult resident of Bourbonnais, Illinois and worked as an Operations Supervisor for Defendants at its manufacturing plant in Kankakee, Illinois.

3.      During the relevant time period giving cause to the legal claims herein, several hundred non-Unionized employees performed work for Defendants at their respective plant facilities across the state of Illinois, including plants located in Kankakee, Matteson, Gurnee,

South Chicago, Moline, Romeoville, Wheeling, Effingham, Rockford, Flora, and Homewood (collectively "Illinois Plants").

4. Defendants collected biometric identifiers and biometric information from its employees at each of the Illinois Plants through its employee identification/authentication system. Plaintiff and these individuals are referred to herein as the "putative BIPA Class" members.

5. Defendant Valspar is a manufacturer of paint and coatings with its headquarters in Minneapolis, Minnesota and a manufacturing plant located at 901 North Greenwood Avenue, Kankakee, Illinois 60901. Valspar conducts substantial business operations throughout the state of Illinois.

6. Defendant Valspar is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

7. Defendant Sherwin is a manufacturer, distributor and seller of paints and coatings with its headquarters in Cleveland, Ohio and a manufacturing plant in Kankakee, Illinois. Sherwin conducts substantial business operations throughout the state of Illinois.

8. Defendant Sherwin is an "enterprise" as defined in 29 U.S.C. § 203(r)(1), and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

**JURISDICTION AND VENUE**

9. This Court has diversity jurisdiction of this action under 28 U.S.C. § 1332(a) and the Class Action Fairness Act, 28 U.S.C. § 1332(d).

10. The unlawful employment practices described herein were committed in this judicial district at Defendants' facility in Kankakee, Illinois, as well as the Illinois Plants across the state of Illinois . Venue in the Central District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

11. Hart began working for Valspar as an Operations Supervisor in or around September 2016 at its Kankakee, Illinois manufacturing plant.

12. Hart was employed at the time Valspar installed a new Kronos time system that included a fingerprint scanner in or around April 2017.

13. Shortly thereafter, as a condition of his continued employment, Valspar required Hart to have his fingerprint collected and/or captured so that Valspar could store his fingerprint and use his fingerprint as an employee authentication method going forward, instead of using only key fobs or other identification cards.

14. Valspar subsequently stored Plaintiff's fingerprint data in its database(s).

15. After collecting/capturing their fingerprints in Valspar's biometric tracking system, Plaintiff used the fingerprint scanner to clock-in and clock-out of work each day.

16. Plaintiff's co-workers were similarly required to have their fingerprints collected and/or captured as a condition of their continued employment with Valspar so that Valspar could store their fingerprint data and use it for employee authentication.

17. During the relevant time period, there were hundreds of non-Unionized employees working at the Illinois Plants.

18. During his employment with Defendants, Hart primarily worked at the Kankakee plant. He also visited several of the other Illinois Plants, including Defendants' plants located in

3

Effingham, Wheeling and South Chicago. Hart personally observed the use of and/or physical presence of biometric fingerprinting scanners that were the same as or similar to the biometric fingerprint scanner that Hart used at the Kankakee plant.

19. In and around 2017, Hart spoke with Dana Rybicki, Regional Human Resources Representative, and Janet Meyer, Operations Manager, about the use of the fingerprint scanners.

20. During this conversation, Rybicki told Hart that all Sherwin facilities in Illinois were using the same biometric fingerprint scanner devices for time clock purposes and that Defendants needed uniformity across the Illinois Plants due to the new payroll system.

21. During the same conversation, Meyer stated that any employee without a thumb punch would not be paid.

22. Valspar required Plaintiff and the putative BIPA Class to enter a numeric passcode first, then scan their respective fingerprint to clock-in and enter the employee work area at Defendants' facility.

23. Valspar required Plaintiff and the putative BIPA Class to use a fingerprint scanner each time they began their workday.

24. Valspar never informed Plaintiff and the putative BIPA Class of the specific limited purposes or length of time for which it collected, stored, or used their biometric identifiers and biometric information.

25. Similarly, Valspar never informed Plaintiff and the putative BIPA Class of any biometric data retention policy that it developed, nor whether Valspar would ever permanently delete their biometric information.

26. Valspar failed to provide Plaintiff or any member of the putative BIPA Class, with written notice of the fact that they were collecting biometric information prior to collection.

27. Valspar failed to maintain or publicize information about its biometric practices or policies; and failed to provide Plaintiff, or any member of the putative BIPA Class, with information about their policies or practices.

28. Plaintiff was not provided with, nor did he ever sign a written release allowing Valspar to collect or store his biometric information.

29. Plaintiff's experiences as described above are typical and representative of the experiences of the putative BIPA Class.

30. Plaintiff and the putative BIPA Class have continuously and repeatedly been exposed to risks, harmful conditions, and violations of privacy through Defendants' violations of BIPA as described herein.

31. On June 1, 2017, Sherwin acquired Valspar in a business merger. As a result of the merger, Sherwin has successor liability.

32. Following the merger, Sherwin became Plaintiff's employer.

33. In or about early 2018, Defendants discontinued the use of biometric fingerprint scanners in the Kankakee manufacturing plant. On information and belief, Defendants have likewise discontinued the use of biometric fingerprint scanners at the other Illinois Plants.

34. Plaintiff's employment with Defendants ended in March 2020, yet at no point have Defendants informed Plaintiff or other members of the putative BIPA Class no longer employed by Defendants as to when and how their personal biometric information would be permanently destroyed, if at all.

35. Despite the use of biometric scanners being discontinued over two years ago and the initial purpose of Defendants' collection of personal biometric data assumedly having been satisfied, Defendants never informed Plaintiff or members of the putative BIPA Class that their

5

personal biometric data in Defendants' possession had been deleted.

## BIPA CLASS ALLEGATIONS

36.     The practices, policies, and consequences pertinent to Defendants' biometric system as described above apply to each BIPA Class member.

37.     Defendants employed several hundred individuals at the Illinois Plants who are similarly situated persons and potential BIPA Class members.

38.     Plaintiff brings this action pursuant to Fed. R. Civ. P 23 on behalf of Plaintiff and the putative BIPA Class of similarly situated individuals, defined as follows:

> All of Defendants' non-union employees who worked in the State of Illinois who had their biometric information collected, captured, received, otherwise obtained, used, distributed, or stored by Defendants.

39.     This action on behalf of the Rule 23 class satisfies the requirements of Fed. R. Civ. P. 23(a), as alleged in the following particulars:

   a) The exact number of putative BIPA Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the putative BIPA Class. Ultimately, the putative BIPA Class members will be easily identified through Defendants' records.

   b) There are questions of law and/or fact common to the claims of Plaintiff and the putative BIPA Class, including: (i) whether Defendants collected, captured, or otherwise obtained Plaintiff's and the putative BIPA Class's biometric identifiers or biometric information; (ii) whether Defendants properly informed Plaintiff and the putative BIPA Class of its purposes for collecting, using, and storing their

        biometric identifiers or biometric information; (iii) whether Defendants obtained a written release (as defined in 740 Ill. Comp. Stat. 14/10) to collect, use, and store Plaintiff's and the putative BIPA Class's biometric identifiers or biometric information; (iv) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first; (v) whether Defendants comply with any such written policy (if one exists); (vi) whether Defendants used Plaintiff's and the putative BIPA Class's fingerprints to identify them; and (vii) whether Defendants violations of the BIPA were committed negligently or recklessly.

    c) The claims of Plaintiff are typical of the claims of the proposed class and they have the same interests as the other members of the putative BIPA Class; and

    d) Plaintiff will fairly and adequately represent and protect the interests of the putative BIPA Class and has retained counsel competent and experienced in complex litigation and class actions.

    40.    In addition, this action satisfies the requirements of Fed. R. Civ. P. 23(b), because the questions of law and/or fact common to the members of the proposed class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all class members is impractical. The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. The damages suffered by the

individual members of the putative BIPA Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants wrongful conduct. Thus, it would be virtually impossible for the individual members of the putative BIPA Class to obtain effective relief from Defendants misconduct. Even if members of the putative BIPA Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured. There will be no difficulty in the management of this action as a class action.

### COUNT I – BIOMETRIC INFORMATION PRIVACY ACT
### 740 Ill. Comp. Stat. 14/15(a)
### (Class Action)

41. Plaintiff restates and incorporates paragraphs 1-40 as though fully set forth herein.

42. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 Ill. Comp. Stat. 14/10.

43. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 Ill. Comp. Stat. 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

44. The BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy.

8

Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (i.e., when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information once the initial purpose for collecting and/or obtaining such biometric data has been satisfied or within three years of an individual's last interaction with the company, whichever occurs first. *See* 740 Ill. Comp. Stat. 14/15(a).

45. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

46. Defendants failed to comply with these BIPA mandates.

47. Valspar is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

48. Sherwin is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

49. Plaintiff and the putative BIPA Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints). *See* 740 Ill. Comp. Stat. 14/10.

50. Plaintiff and the putative BIPA Class's biometric identifiers or information based on those biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

51. Defendants violated 740 Ill. Comp. Stat. 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

52. Defendants further violated 740 Ill. Comp. Stat. 14/15(a) by failing to adhere to a retention schedule and actually deleting/destroying the biometric information of Plaintiff and members of the putative BIPA Class once the initial purpose for collecting and/or obtaining such biometric data was satisfied.

53. By collecting, storing, and using Plaintiff's and the putative BIPA Class's biometric identifiers and biometric information as described herein, and not actually deleting and destroying the biometric information of Plaintiff's and members of the putative BIPA Class, Defendants violated Plaintiff's and the putative BIPA Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 Ill. Comp. Stat. 14/1, et seq.; *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186, 2019 WL 323902 (Ill. Jan. 25, 2019).

54. For each of the violations identified above, Plaintiff and the members of the putative BIPA Class are entitled to recover anywhere from $1,000 to $5,000 in statutory damages. Given that Defendants biometric scanner system was in place for at least six (6) months, if not longer, the class-wide damages exceeds $5,000,000.00 as required under the Class Action Fairness Act.

WHEREFORE, Plaintiff Steven Hart, individually and on behalf of other similarly situated individuals, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendants Valspar and Sherwin-Williams and grant them the following relief:

A. Certifying this case as a class action on behalf of the putative BIPA Class defined above, appointing Plaintiff as representative of the putative BIPA Class, and appointing his counsel as Class Counsel;

B. Awarding injunctive and other equitable relief as is necessary to protect the interests of the putative BIPA Class, including an Order requiring Defendants to comply with all provisions of the BIPA;

C. Awarding statutory damages to each person whose rights were violated under the BIPA, pursuant to 740 Ill. Comp. Stat. 14/20;

D. Awarding Plaintiff and the putative BIPA Class their reasonable litigation expenses and attorneys' fees;

E. Awarding Plaintiff and the putative BIPA Class pre- and post-judgment interest, to the extent allowable; and

F. Awarding such other and further relief as equity and justice may require.

### COUNT II – BIOMETRIC INFORMATION PRIVACY ACT
### 740 Ill. Comp. Stat. 14/15(b)
### (Class Action)

55. Plaintiff restates and incorporates paragraphs 1-40 as though fully set forth herein.

56. The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3)

receives a written release executed by the subject of the biometric identifier or biometric information…." 740 Ill. Comp. Stat. 14/15(b) (emphasis added).

57. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 Ill. Comp. Stat. 14/10.

58. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and fingerprints. *See* 740 Ill. Comp. Stat. 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

59. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

60. Defendants failed to comply with these BIPA mandates.

61. Valspar is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

62. Sherwin is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

63. Plaintiff and the putative BIPA Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints). *See* 740 Ill. Comp. Stat. 14/10.

64. Plaintiff and the putative BIPA Class's biometric identifiers or information based on those biometric identifiers were used to identify them, and therefore constitute "biometric information" as defined by the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

65. Defendants violated 740 Ill. Comp. Stat. 14/15(b)(1) by failing to inform Plaintiff and the putative BIPA Class in writing that their biometric identifiers and biometric information were being collected and stored.

66. Defendants violated 740 Ill. Comp. Stat. 14/15(b)(2) by failing to inform Plaintiff and the putative BIPA Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

67. Defendants violated 740 Ill. Comp. Stat. 14/15(b)(3) by failing to obtain written releases from Plaintiff and the putative BIPA Class before it collected, used, and stored their biometric identifiers and biometric information.

68. By collecting, storing, and using Plaintiff's and the putative BIPA Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the putative BIPA Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 Ill. Comp. Stat. 14/1, et seq.; *Rosenbach v. Six Flags Entertainment Corp.*, No. 123186, 2019 WL 323902 (Ill. Jan. 25, 2019).

69. For each of the violations identified above, Plaintiff and the members of the putative BIPA Class are entitled to recover anywhere from $1,000 to $5,000 in statutory damages. Given that Defendants' biometric scanner system was in place for at least six (6) months, if not longer, the class-wide damages exceeds $5,000,000.00 as required under the Class Action Fairness Act.

WHEREFORE, Plaintiff Steven Hart, individually and on behalf of other similarly situated individuals, respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Defendants Valspar and Sherwin-Williams and grant him the following relief:

A. Certifying this case as a class action on behalf of the putative BIPA Class defined above, appointing Plaintiff as representative of the putative BIPA Class, and appointing his counsel as Class Counsel;

B. Awarding injunctive and other equitable relief as is necessary to protect the interests of the putative BIPA Class, including an Order requiring Defendants to comply with all provisions of the BIPA;

C. Awarding statutory damages to each person whose rights were violated under the BIPA, pursuant to 740 Ill. Comp. Stat. 14/20;

D. Awarding Plaintiff and the putative BIPA Class their reasonable litigation expenses and attorneys' fees;

E. Awarding Plaintiff and the putative BIPA Class pre- and post-judgment interest, to the extent allowable; and

F. Awarding such other and further relief as equity and justice may require.

Dated: February 11, 2021

Marc J. Siegel, IARDC No. 6238100
Bradley Manewith, IARDC No. 6280535
James D. Rogers, IARDC No. 6324570
SIEGEL & DOLAN LTD.
150 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel. (312) 878-3210
Fax (312) 878-3211
msiegel@msiegellaw.com
bmanewith@msiegellaw.com
jrogers@msiegellaw.com

Respectfully submitted,

STEVEN HART, on behalf of himself and all other similarly situated persons, known and unknown,

By: /s/ James D. Rogers
     *One of Plaintiff's Attorneys*

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that he caused a copy of the foregoing PLAINTIFF'S AMENDED COMPLAINT to be filed with the Clerk of Court using the Court's CM/ECF system on February 11, 2021, which will send a notice of electronic filing to the following counsel of record:

    Michael J. Gray, Esq.
    Jennifer Wilcynski Plagman, Esq.
    Efrat R. Schulman, Esq.
    JONES DAY
    77 West Wacker Drive, Suite 3500
    Chicago, IL 60601
    mjgray@jonesday.com
    jplagman@jonesday.com
    eschulman@jonesday.com

Dated: February 11, 2021                  /s/ James D. Rogers